Filed 1/13/15  P. v. Shermer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND SHERMER,<br><br>    Defendant and Appellant. | C075590<br><br>(Super. Ct. Nos.<br>13F00020 & 13F04091) |

Defendant Raymond Shermer pleaded guilty to possession of a controlled substance for sale (Health & Saf. Code, § 11378) and transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)).  He admitted a prior burglary conviction for purposes of the "Three Strikes" law.  (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.)  He also admitted a prior conviction for transporting a controlled substance in violation of Health and Safety Code section 11379, within the meaning of Health and Safety Code section 11370.2, subdivision (c) and an on-bail enhancement pursuant to Penal Code section 12022.1.

Prior to sentencing, defendant filed a motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) asking the trial court to dismiss his prior burglary conviction. The trial court denied the motion.

On appeal, defendant contends the trial court abused its discretion in denying his *Romero* motion. Finding no error, we affirm the judgment.

## BACKGROUND

A. Factual Background

*Case No. 13F00020*

On December 30, 2013, Sacramento Police Officers Buno and Magner were on patrol when they observed defendant using a cell phone while driving in violation of California Vehicle Code section 23123. Magner initiated an enforcement stop and approached defendant's car on the driver's side. Buno positioned himself on the passenger's side of the car.

Magner got defendant's name and returned to the patrol car to conduct a records check. Buno observed defendant from the passenger's side of defendant's car. He noticed that defendant appeared nervous and fidgety. While Buno was watching, defendant removed a clear plastic case from the lower portion of his body and dumped the contents into a cup in the center console of the car. Buno illuminated the center console area of the car and observed a crystallized substance resembling methamphetamine.

Buno and Magner forcibly removed defendant from the car. During the struggle, the cup was knocked over and the contents spilled all over the car.

Defendant was placed in handcuffs. Officers searched the car, scraping the crystallized substance from the dash, air conditioning vents, and upholstery. By the time they were finished, they had collected approximately 46 grams of the crystallized substance from the interior of the car. The substance was later identified as methamphetamine. Buno and Magner also found a scale with methamphetamine residue

2

on it and a glass pipe used for smoking methamphetamine. Buno also searched defendant's cell phone, and found text messages from an individual who seemed to be interested in buying drugs from defendant.

At the preliminary hearing, Buno was qualified as an expert in methamphetamine sales and opined that defendant possessed the drugs for sale, based upon the large quantity, the scale, and the text messages.

*Case No. 13F04091*

On June 30, 2013, Officer Michael Severi contacted defendant on Fruitridge Road in Sacramento County. At the time, defendant was out on bail for case No. 13F00020.

Severi searched defendant's car and found a baggie containing 0.96 grams of methamphetamine. Severi also found baggies, $1,392 (mostly in small denominations), and a small spoon. Severi searched defendant's cell phone and engaged in a staged conversation with an individual who appeared to be interested in buying drugs from defendant.

At the preliminary hearing, Severi was qualified as an expert in methamphetamine sales and opined that defendant possessed the drugs for sale, given the large sum of cash, baggies (which were presumably used to make bindles), and text messages.

B. Procedural Background

Defendant's cases were consolidated and defendant was charged by information with four counts as follows: (1) possession of a controlled substance for sale (Health & Saf. Code, § 11378 – count one); (2) transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a) – count two); (3) possession of a controlled substance for sale (Health & Saf. Code, § 11378 – count three); and (4) transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a) – count four). The information further alleged that defendant had a prior serious felony conviction for a 2005 burglary (Pen. Code, § 459) within the meaning of Penal Code sections 1192.7 and 667.5, subdivisions (b)-(i). The information further alleged that defendant had a prior conviction for

3

possession of a controlled substance for sale (Health & Saf. Code, § 11378) within the meaning of Health and Safety Code section 11370.2, subdivision (c) in 1990 and another prior conviction for transporting a controlled substance in 2008, for which he served a state prison term within the meaning of Penal Code section 667.5, subdivision (b). With respect to counts three and four, the information further alleged that defendant committed the offenses while out on bail pursuant to Penal Code section 12022.1.

On October 21, 2013, defendant filed a *Romero* motion asking the trial court to exercise its discretion to strike his prior burglary conviction pursuant to Penal Code section 1385. The motion summarized defendant's criminal history as follows: (1) a 1990 conviction for possession of a controlled substance for sale (Health & Saf. Code, § 11378) for which defendant received 90 days in county jail; (2) a 1996 conviction for petty theft (Pen. Code, § 484) for which defendant received 10 days in county jail; (3) a 2003 conviction for auto theft (Veh. Code, § 10851) for which defendant received 120 days in county jail; (4) the 2005 burglary conviction (Pen. Code, § 459) for which defendant originally received 240 days in the county jail, but later received two years eight months in state prison after he violated his probation; (5) a 2006 conviction for possession of a controlled substance (Health & Saf. Code, § 11377) for which defendant was sentenced to three years in state prison; and (6) a 2008 conviction for transportation of a controlled substance for sale (Health & Saf. Code, § 11379) for which defendant was sentenced to six years in state prison.

The motion also emphasized defendant's decades-long struggle with drug addiction, the nonviolent nature of his crimes, and the remoteness of his 2005 burglary conviction.

The parties appeared before the court for defendant's change of plea hearing later that day. At the hearing, the trial court confirmed that it had received, read, and considered defendant's motion. The trial court asked defense counsel whether he had anything to add, and defense counsel responded he did not. The trial court then stated:

4

"All right. The Court does have the discretion to strike a prior serious felony in the appropriate case. This does not appear to be an appropriate case for the Court to exercise its discretion." The trial court went on to observe that "while [defendant] was on probation for the first degree burglary, he violated [Health and Safety Code] Section 11377, which resulted in a prison commitment. And then in 2008, he was convicted of 11379 of the Health and Safety Code, and sentenced to six years in the state prison." Accordingly, the trial court concluded, "This is not a case where the Court would exercise its discretion. So the motion to strike the prior serious felony conviction is denied."

Defendant then entered a plea of guilty to count one (possession of a controlled substance for sale) and count four (transportation of a controlled substance). Defendant also admitted the on-bail enhancement as to count four, the prior burglary conviction, and the prior conviction for transporting a controlled substance in violation of Health and Safety Code section 11379, within the meaning of Health and Safety Code section 11370.2, subdivision (c), in exchange for an aggregate term of 13 years.

Defendant appeared for sentencing on December 5, 2013. In anticipation of sentencing, defendant submitted a handwritten letter to the trial court stating: ". . . I've been accepted to Delancey Street and Jericho Project based on the fact that I've never been given a chance at any rehabilitative program. I have no job skills and these programs can change and save my life by teaching me a skill and behavior modification. I am willing to take my full [exposure] time suspended in order to enter one of these programs." Defendant's letter also noted that defendant has been "a functional addict for over 20 yrs."

Defendant also asked to be heard prior to sentencing. He reiterated that he had been accepted to a drug rehabilitation program and was interested in pursuing treatment. He also reiterated that he had no job skills and was "willing to take my full exposure time suspended if I was able to be granted to a behavior modification program to save my

5

life." The trial court asked defense counsel whether he had advised his client that the Delancey Street drug treatment program was not an option for defendant in light of the prior strike conviction. Defense counsel responded that he had.

Defense counsel then offered a letter from defendant's wife or fiancée.[1] The letter urged the trial court to consider a drug treatment program in lieu of prison, noting that defendant "has not once been offered *any* rehabilitation." The trial court received, read, and considered the letter, but denied the request, stating, "as we said earlier the prior serious felony convictions [*sic*] precludes that type of sentence because it requires a grant of probation, and that is prohibited by statute. [¶] The Court does not have discretion to impose that sort of a sentence."

The trial court then sentenced defendant to 13 years in state prison as follows: the upper term of three years, doubled to six because of the prior serious felony conviction for count one (possession for sale); one-third the middle term or two years for count four (transportation for sale); an additional term of two years for the on-bail enhancement; and an additional three years for the prior drug conviction enhancement under Health and Safety Code section 11370.2, subdivision (c).

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends the trial court abused its discretion in denying the motion to strike his 2005 burglary conviction.[2] We disagree.

---

[1] The record is ambiguous as to the letter writer's status. In the letter, she describes herself as defendant's wife. In defendant's opening brief, she is described as defendant's fiancée. The ambiguity is irrelevant to our analysis and conclusion.

[2] Defendant's *Romero* contention does not challenge the validity of his plea and does not require a certificate of probable cause. (See generally *People v. Buttram* (2003) 30 Cal.4th 773, 781-782 [" 'the critical inquiry [in determining whether a certificate of probable cause is required] is whether a challenge to the sentence is *in substance* a

6

Penal Code section 1385 gives the trial court authority, on its own motion or upon application of the prosecution, "and in furtherance of justice," to order an action dismissed. (Pen. Code, § 1385, subd. (a).) In *Romero*, the California Supreme Court held that a trial court may use Penal Code section 1385 to strike or vacate a prior strike for purposes of sentencing under the Three Strikes law, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (*Romero, supra*, 13 Cal.4th at p. 504.) Thus, a trial court's "failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)

In ruling on a *Romero* motion, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

Dismissal of a strike is a departure from the sentencing norm. Therefore, in reviewing a *Romero* decision, we will not reverse for abuse of discretion unless the defendant shows the decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra*, 33 Cal.4th at p. 377.) Reversal is justified where the trial court was unaware of its discretion to strike a prior strike or refused to do so for impermissible reasons. (*Id.* at p. 378.) But where the trial court, aware of its discretion, " 'balanced the relevant facts and reached an impartial decision in conformity with the

---

challenge to the validity of the plea' " and " ' "the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made" ' "]; see also *People v. Panizzon* (1996) 13 Cal.4th 68, 78 [the fact that sentencing occurred after the plea was not determinative].)

7

spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]." (*Ibid.*)

Here, the record clearly establishes that the trial court was aware of its discretion. Defendant argues that the trial court abused its discretion by focusing solely on defendant's criminal record, and ignoring other mitigating factors. However, the record confirms that the trial court received, read, and considered defendant's *Romero* motion, which addressed the factors said to have been overlooked (namely, the nonviolent nature of defendant's current and past offenses, as well as his ongoing struggle with drug addiction). Although the trial court expressly referred only to defendant's criminal history in stating its reasons for denying his *Romero* motion, we presume the court actually considered, and based its decision on, all of the relevant factors, including the factors discussed in defendant's motion. (*People v. Myers* (1999) 69 Cal.App.4th 305, 309-310.)

Defendant also argues that the trial court failed to consider the nonviolent nature of the current offenses. However, the fact that the current offenses were nonviolent does not mandate the granting of a *Romero* motion. (See *People v. Strong* (2001) 87 Cal.App.4th 328, 344 [reversing order granting *Romero* motion based on nonviolent nature of current offense because "the nonviolent or nonthreatening nature of the felony cannot alone take the crime outside the spirit of the law"]; see also *People v. Poslof* (2005) 126 Cal.App.4th 92, 108 [even though current crime, failing to register as sex offender was nonviolent, denial of the *Romero* motion was not an abuse of discretion]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 (*Gaston*) [although current crime of car theft was "not as serious as many felonies," it was "far from trivial"].)

Furthermore, defendant's current offenses, though nonviolent, were nonetheless quite serious. (*Gaston, supra*, 74 Cal.App.4th at p. 315.) Defendant was apprehended with a large quantity of methamphetamine, one of the most addictive narcotics. He was caught with methamphetamine a second time just six months later. As the People

observe, the unlawful sale of methamphetamine leaves a trail of individual victims and devastates communities. Thus, the fact that defendant's current offenses were nonviolent does not take him outside of the spirit of the Three Strikes law.

Defendant also emphasizes the nonviolent nature of his criminal history, claiming "he emerges as an atypically mild 'striker' with no other aggravating circumstances." However, defendant, age 46, has a criminal record spanning more than 20 years. He has six prior convictions, including four prior convictions for selling or transporting drugs. He committed the drug offense in case No. 13F04091 while on bail for a similar offense in case No. 13F00020, suggesting he is unwilling to live within the law, even when facing serious criminal charges. Under the circumstances, the trial court could reasonably conclude that defendant's criminal history did not warrant sentencing outside of the Three Strikes law.

Defendant also argues that "[t]he 'strike' in his record, a first degree burglary, must have been less serious than most such offenses because he was originally granted probation." However, first degree burglary is a serious felony. (Pen. Code, § 1192.7, subd. (c)(18).) Furthermore, defendant suffered a conviction for possession of a controlled substance while on probation for the burglary conviction, thereby causing his probation to be revoked. Based on this record, the trial court could reasonably conclude that defendant " 'failed or refused to learn his lesson.' " (*Williams, supra*, 17 Cal.4th at p. 163.)

Defendant also argues that the trial court failed to fully consider his drug addiction. "However, drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511.) Defendant claims he "has never been offered the opportunity to enter rehab." However, defendant's recent efforts to seek treatment, though commendable, do not relieve him from the operation of the Three Strikes law. Furthermore, the trial court could reasonably conclude that

9

defendant's prolonged drug abuse, and failure to seek treatment for more than 20 years, suggest that his prospects for rehabilitation are bleak.  (*Gaston*, *supra*, 74 Cal.App.4th at p. 322; *People v. Martinez, supra*, 71 Cal.App.4th at p. 1511; see also *In re Handa* (1985) 166 Cal.App.3d 966, 973-974 ["Drug use or drug addiction at the time of an offense is an example of a disputable factor in mitigation.  The sentencing court may find that drug use did not significantly affect the defendant's capacity to exercise judgment or, in the case of an addiction of long standing, that the defendant was at fault for failing to take steps to break the addiction."].)

Finally, defendant argues that he "should be treated as though he fell outside the [t]hree [s]trikes scheme, because he is an addict who, if treated, can be a contributing member of society."  Defendant's contention amounts to an invitation for us to second guess the trial court and substitute our own opinion as to leniency, which we cannot do. (*Williams*, *supra*, 17 Cal.4th at pp. 158-161.)  There is no indication the trial court failed to consider any of the mitigating factors presented in connection with defendant's *Romero* motion.  Accordingly, we conclude there was no abuse of discretion.

## DISPOSITION

The judgment is affirmed.

                                 BLEASE             , J.

We concur:

      RAYE              , P. J.

      BUTZ              , J.